1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CALLEEN RIVAS,

            Plaintiff,

    v.

AMERICAN FAMILY INSURANCE COMPANY,

            Defendant.

Case No. C23-1716 RSM

ORDER DENYING SUMMARY JUDGMENT

## I.    INTRODUCTION

This matter comes before the Court on Plaintiff Calleen Rivas' Motion for Summary Judgment, Dkt. #20. Defendant American Family Insurance Company opposes and requests the Court *sua sponte* grant summary judgment in its favor. Dkt. #23 at 19. Neither party has requested oral argument. For the reasons below, the Court will deny Plaintiff's Motion.

## II.    BACKGROUND

This case stems from a motor vehicle collision on December 19, 2018, near Walla Walla, Washington. Dkts. #20 at 2, #23 at 3. Plaintiff was injured in the crash and received $100,000 from the at-fault driver's insurance policy. *Id*.; Dkt. #24 at ¶ 3. Plaintiff then filed a claim against her own Underinsured Motorist insurance policy ("UIM") on November 10, 2022, including a

ORDER DENYING SUMMARY JUDGMENT - 1

right thumb injury resulting in surgery and hearing loss/tinnitus.  Dkts. #20 at 2, #21 at Ex. 1, #24 at ¶ 5 and Ex. 2.

Plaintiff's claim included medical records.  Regarding her hearing, Plaintiff was examined on September 27, 2019, by a doctor of audiology, who stated, "I suspect the hearing loss and tinnitus more likely than not resulted from permanent damage to the cochlea due to the MVA [motor vehicle accident]."  Dkts. #21 at Ex. 1, #27 at Ex. 1.  For her thumb, Plaintiff received bracing and injections, which were unsuccessful.  Dkt. #27 at Ex. 1.  At an evaluation on August 11, 2019, Plaintiff's doctor stated that Plaintiff had "immediate moderate to severe pain in her thumb" from the accident and "had no pain prior to her injury."  Dkt. #27 at Ex. 2. Plaintiff received an x-ray, which showed "mild to moderate osteoarthritis" that, based on Plaintiff's statements, was not symptomatic until after the accident.  *Id*.  She proceeded with conservative therapy, including injections, but ultimately underwent carpometacarpal joint arthroplasty and flexor carpi radialis tendon surgery on February 13, 2020.  *Id*.  Plaintiff's surgeon noted that she had a preoperative diagnosis of arthritis in her right thumb and that she presented "with pain and weakness in the right thumb following a MVA [motor vehicle accident] December 2018."  *Id*.  The surgeon physician assistant's statement noted that Plaintiff "sustained an injury to the right thumb after the accident" and "noted new continued pain at the base of the thumb since the accident as well."  *Id*.

Following surgery, Plaintiff's continued pain and limitations made it difficult to do her job as a surgical nurse.  Dkt. #21 at Ex. 1.  Her claim letter alleged that she missed twelve weeks of work and ultimately had to resign from her job.  *Id*.  Plaintiff claimed special damages totaling $140,809.42, including $67,679.42 in medical, $29,688 in wage loss, and $43,442 in projected future medical costs.  *Id*.

Between November 2021 and February 2025, Defendants reviewed Plaintiff's UIM claim. Defendant's assigned claims adjuster, Vanessa Ortiz, conducted these reviews, and each review included a medical records review by Defendant's employee and registered nurse, Annie Leaf. Dkts. #20 at 3-13 (citing exhibits), #23 at 4-11 (citing exhibits). These reviews all resulted in an "unclear" finding as to the relatedness of the accident and Plaintiff's injuries due to Plaintiff's pre-existing arthritis and delayed hearing loss. Leaf suggested obtaining medical records for three years prior to the accident would be helpful.

Ortiz finalized her initial review on December 30, 2022. Dkt. #24 at Ex. 2. She allowed for six weeks of treatment for Plaintiff's right thumb injury based on this being an aggravation of a pre-existing condition, partially attributable to the accident but also due to Plaintiff's arthritis, and some of the claimed wages, but she ultimately determined that Plaintiff was fully compensated by the at-fault party's $100,000 liability settlement and Plaintiff's $42,000 personal injury protection coverage. *Id*. at Ex. 3; Dkt. #20 at 6.

In the second review with supplemental billings, Ortiz accepted six of forty weeks of wage loss, $5,160, because Defendant did not fully attribute the thumb injury to the accident but considered some of the treatment. Dkt. #20 at 9; #21, Ex. 2, at 163. She also included $61,099.10 of the requested $78,856.95 for medical treatment, but she again determined that Plaintiff had already received full compensation. Dkt. #23 at 6 (citing exhibits).

For the third review, Plaintiff included three years of prior medical records, "documenting that Ms. Rivas had no prior hearing complaints or right thumb and hand complaints." Dkt. #20 at 10 (citing exhibit). In October 2023, Defendant notified Plaintiff that the evaluation remained unchanged. Dkt. #21 at Ex. 13.

Plaintiff filed this action on November 9, 2023. Dkt. #1. Following this filing, Defendant sent Plaintiff's claim to three independent medical doctors (an orthopedic surgeon, neurologist,

and otolaryngologist) for review. Dkt. #23 at 8. The orthopedic surgeon, Dr. Olch, opined that Plaintiff's thumb injury was not fully related to the accident. Dkt. #24 at Ex. 3. The neurologist concluded that Plaintiff's hearing issues were not related to the accident. *Id*. at Ex. 4. The otolaryngologist concluded that Plaintiff's hearing issues were also unrelated to the accident "on a more likely than not basis." *Id*. at Ex. 5. Thus, claims adjuster Ortiz concluded that Plaintiff had been compensated for her injuries. Dkt. #23 at 9.

On December 3, 2024, Dr. Olch performed a Federal Rule of Civil Procedure 35 medical examination on Plaintiff. Dkts. #21 at Ex. 14, #24 at Ex. 6. Dr. Olch reported a finding that no other provider caught since the accident, diagnosing Plaintiff with a "[r]ight 'thumb in palm' deformity, secondary to closed head injury or spinal cord injury. This is a result of the motor vehicle collision of December 19, 2018." Dkt. #21 at Ex. 14. Thus, Dr. Olch concluded that "Plaintiff's thumb injury was the result of upper motor neuron syndrome caused by a TBI [traumatic brain injury] that occurred during the collision." Dkt. #23 at 10. Upon receiving this conclusion, Defendant sent the report to a neurologist. *Id*. The neurologist confirmed Dr. Olch's conclusion, noting that "Plaintiff's presentation of upper motor neuron syndrome caused by a TBI was extremely rare and unlikely." Dkt. #24 at Ex. 7. Following this confirmation, Defendant tendered the full $250,000 UIM policy limit to Plaintiff on February 19, 2025. Dkts. #20 at 12, #21 at Ex. 15.

Plaintiff filed her Complaint back on November 9, 2023, alleging breach of contract, violations of Washington's Consumer Protection Act, negligence and bad faith, and violations of the Insurance Fair Conduct Act, and requesting direct, consequential, and actual damages, attorney fees and costs, and prejudgment interest. Dkt. #1 at 7-10. Plaintiff filed the instant Motion on April 25, 2025, requesting summary judgment on her bad faith claim. Dkt. #20. Defendant responded on May 16, 2025, requesting the Court award summary judgment *sua*

*sponte* in Defendant's favor or "at minimum" that disputes of fact preclude a finding for Plaintiff. Dkt. #23 at 12.

### III.    DISCUSSION

### 1. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 72 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

//

//

ORDER DENYING SUMMARY JUDGMENT - 5

### 2. Analysis

Plaintiff moves for summary judgment on her bad faith claim, alleging that Defendant denied her coverage "without any supporting medical evidence and in admitted violation of its own policies and procedures" and that Defendant "failed to include valuation for contractually owed damages for injuries which it accepted under its coverage[.]" Dkt. #20 at 1.  Defendant argues that summary judgment should be granted in its favor because "the record before the Court shows unequivocally reasonable claim handling, evaluations[,] and payment." Dkt. #23 at12.  In alternative, Defendant argues that "the facts presented show, at minimum, a dispute which precludes a finding in Plaintiff's favor." *Id*.

"[A]n an insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith." *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1276 (2003). In a UIM case, "the insurer stands in the tortfeasor's shoes and thus is in an adversarial relationship with its own insured." *Garrison v. Allstate Insurance Co.*, No. 21-cv-00624-DGE, 2022 WL 1061916, at *4 (W.D. Wash. Apr. 8, 2022).  "To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." *Id*. at 1277.  "Whether an insurer acted in bad faith is a question of fact." *Id*.  "Bad faith claims generally raise fact issues preventing a determination on summary judgment." *Hell Yeah Cycles v. Ohio Sec. Ins. Co.*, 16 F. Supp. 3d 1224, 1235 (E.D. Wash. 2014).

"Washington courts have repeatedly emphasized that the test for bad faith 'is not whether the insurer's interpretation [of the policy] is correct, but whether the insurer's conduct was reasonable." *Sagdai v. Travelers Home & Marine Ins. Co.*, 639 F. Supp. 3d 1091, 1108 (W.D. Wash. 2022) (citing to *Wright v. Safeco Ins. Co.*, 124 Wn. App. 263, 109 P.3d 1, 10 (2004) and *Anderson v. State Farm Ins. Co.*, 101 Wn. App. 323, 2 P.3d 1029, 1033 (2000)).  No bad faith

exists where "there is a debatable question regarding coverage for the loss, and the denial of the coverage is based on a reasonable interpretation of the insurance policy." *Capelouto v. Valley Forge Ins. Co.*, 990 P.2d 414, 422 (1999). Only if there are no disputed material facts and reasonable minds cannot differ on the insurer's actions can a party prevail on summary judgment. *See Smith*, 78 P.3d at 1277.

Here, Plaintiff argues that her doctors consistently attributed her pain to the accident and that Defendant's delayed seeking of a medical opinion was "damning," in breach of its own policies, and unreasonable. Dkt. #20 at 16-18. She further argues that Defendant refused to fully cover her lost wages from her thumb injury based "on speculation and conjecture." *Id*. at 20. Defendant contends that Plaintiff's medical records were unclear as to whether her thumb surgery happened due to pain from the accident or her degenerative arthritis or whether her hearing loss was from the accident alone. Dkt. #23 at 13-17. Defendant also contends that Nurse Leaf "only suggested obtaining medical records for three years before the collision," and "that a medical records review is performed if the medical services review suggests one—this did not occur here." *Id*. at 17. Finally, Defendant contends that it "allowed [wage] compensation for the thumb condition to the extent it was supported by the medical records." *Id*. at 18.

The Court finds that the parties have submitted competing evidence that precludes summary judgment. The facts suggest that Defendant delayed and denied coverage based on its internal review, but whether this was reasonable is a question of fact better left to a jury. Based on the record, the Court cannot say that reasonable minds would not differ on whether Plaintiff's arthritis precluded initial full coverage after surgery, if Defendant was unreasonable or breached policy by not requesting a medical review sooner, or if Defendant's partial allowance of recovery for wage loss was unreasonable. It seems to conflict that Defendant would recognize an injury but not allow full recovery for economic loss, but the Court cannot say that Plaintiff is entitled

to summary judgment based on undisputable evidence as a matter of fact and law.  These are questions for the jury.  Accordingly, the Court will deny summary judgment to both parties on Plaintiff's bad faith claim.

## IV.     CONCLUSION

Having reviewed the instant Motion, responsive briefings, declarations and exhibits attached thereto, and the remainder of the docket, the Court hereby finds and ORDERS that Plaintiff's Motion for Summary Judgment, Dkt. #20, is DENIED.  Defendant's request for *sua sponte* summary judgment is also DENIED.

DATED this 13th day of November, 2025.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER DENYING SUMMARY JUDGMENT - 8